**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division**

WESTERN WORLD INSURANCE )
COMPANY, )
　　　　)
　　Plaintiff, )
　　　　) Case No.: 7:17-CV-518
v. )
　　　　)
AIR TECH, INC., )
　　　　)
　　Defendant. )
＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿)

## **MEMORANDUM OPINION**[1]

This insurance dispute between plaintiff, Western World Insurance Company ("Western World") and its insured, defendant Air Tech, Inc. ("Air Tech") relates to a claim against Air Tech for damage to a piece of equipment Air Tech provided for a construction project. Because I find that the Western World insurance policy does not provide coverage for the claim asserted against Air Tech, I **GRANT** Western World's motion for summary judgment and **DENY** Air Tech's cross-motion for summary judgment.

### I.　　Background

In February 2015, Air Tech entered into a subcontract agreement with Hall's Construction Corp. ("Hall's Construction") to supply a Solvent Recovery Chiller (the "Chiller") as part of a construction project Hall's Construction had undertaken for BAE Ordinance Systems, Inc. Compl. ¶ 6, Dkt. No. 1. The Chiller was delivered and installed, though the parties disagree about whether Air Tech had a role in installation. Thereafter, the Chiller failed to work properly, which required Hall's Construction to replace the Chiller.

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

In February 2017, Hall's Construction filed suit against Air Tech in state court to recover the cost of replacing the Chiller (the "state court action"). In an amended complaint in August 2017, Hall's Construction added Johnson Controls, Inc. ("Johnson Controls") as a defendant, and added allegations of negligence against both Air Tech and Johnson Controls. Compl. ¶ 15. Specifically, Hall's Construction alleges that the Chiller did not operate properly because Air Tech breached its duty "to provide the material and equipment and provide for the installation of a Chiller." State Court Am. Compl. ¶ 4, Dkt. No. 1-5. The state court amended complaint further alleges that:

> [T]he equipment procured from Johnson [Controls] by Air Tech and the manuals provided by Air Tech and Johnson [Controls] negligently failed to accurately describe the equipment, the components and the required electrical connections, which negligent failure and breach of warranty were the proximate cause in the malfunction of the equipment resulting in the . . . destruction of the said equipment.

Id. at ¶ 9. Hall's Construction further alleges that the "failure of the manuals to accurately describe the work to be performed" and the "negligent failure" of Air Tech and Johnson Controls to correctly install the Chiller resulted in the failure of the Chiller, requiring replacement, which cost Hall's Construction $121,629.76.[2] Id. at ¶ 10, Dkt. No. 1-5.

Western World issued a policy of commercial insurance to Air Tech with effective dates from June 18, 2016 through June 18, 2017 (the "Western World policy"). Compl. ¶ 5, Dkt. No. 1; Western World policy attached as Ex. 1 to Compl. Air Tech made a claim under the Western World policy for a defense in the state court action and indemnity for any damages awarded in

---

[2] The parties disagree regarding Air Tech's role in the installation of the Chiller. Western World alleges that, "Upon information and belief, Air Tech did provide and install the Chiller." Compl. ¶ 7, Dkt. No. 1. In contrast, Air Tech maintains that it facilitated delivery of the Chiller by a third-party delivery service, inspected the Chiller upon delivery, but that ultimately Johnson Controls started the Chiller, performed "tests and other work on the Chiller" and provided the related manuals for the Chiller. Def.'s Mem. in Supp. of Summ. J. at 4, Dkt. No. 22. Air Tech also alleges that "it was four employees of [Hall's Construction] who installed the Chiller . . . not Air Tech's employees." Id. However, for purposes of determining coverage under the Western World policy, as explained below, I will consider only the allegations in the state court amended complaint, along with the Western World policy.

favor of Hall's Construction. Compl. ¶ 13, Dkt. No. 1. Western World initially declined to provide a defense to Air Tech, but is currently providing a defense in the state court action under a reservation of rights. D's Mem. in Supp. of Summ. J. at 1, Dkt. No. 22.

Western World filed this action seeking a declaration that it has no duty under the Western World policy to defend or indemnify Air Tech in the state court action. Compl. at 17, Dkt. No. 1. The parties have filed cross-motions for summary judgment which are fully ripe. Dkt. Nos. 19, 21.

**II.     Law**

Federal law determines the procedural aspects of summary judgment in this case, while Virginia law governs the substantive aspects. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 (1938). Summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Resolving this matter through summary judgment is "especially appropriate" because the construction of insurance contracts is a legal question. W. Am. Ins. Co. v. Johns Bros., Inc., 435 F. Supp. 2d 511, 513–14 (E.D. Va. 2006) (quoting Clark v. Metro. Life Ins. Co., 369 F. Supp. 2d 770, 774 (E.D. Va. 2005)).

In a case arising under diversity jurisdiction, the forum state's choice-of-law rules apply, and for insurance disputes, Virginia applies "the law of the place where an insurance contract is written and delivered." Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993);  See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154–55 (4th Cir. 2009). Here, Virginia law applies as the Western World policy was issued and delivered to Air Tech in Virginia  See Compl. ¶ 4, Dkt. No. 1.

### III. Western World Policy

The Western World policy contains the following pertinent provisions concerning coverage:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. <u>Insuring Agreement</u>

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily" injury" or "property damage" to which this insurance does not apply.

    (. . .)

    b. This insurance applies to "bodily injury" and "property damage" only if:
    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

<u>See</u> Western World policy at 32, Ex. 1 to the Compl., Dkt. No. 1-2.

2. <u>Exclusions.</u>

This insurance does not apply to:

    a. <u>Expected or Intended Injury</u>
    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

    b. <u>Contractual Liability</u>
    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability

    (1) That the insured would have in the absence of the contract or agreement; or
    (2) Assumed in the contract or agreement that is an "insured contract," provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

    (. . .)

k. **Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Id. at 33, 36.

**SECTION V – DEFINITIONS**

13. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

16. "Products-completed operations hazard"

a. Includes all "bodily injury" and property damage occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

17. "Property damage" is defined as "Physical injury to tangible property, including all resulting loss of use of that property."

21. "Your product"

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [you].

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of "your product" and

(3) The providing of or failure to provide warnings or instructions.

22. "Your work"

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts, or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) warranties or representation made with respect to the fitness, quality, durability, performance or use of "your work", and

      (2) The providing or failure to provide warnings or instructions.

Id. at 45–47.

## IV. Analysis

### A. Eight Corners Rule

Determining whether insurance coverage exists requires analysis of the claims asserted in the state court action, and whether those claims come within the insuring provisions of the Western World policy. See Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co., 475 S.E.2d 264, 265–66 (Va. 1996); CACI Int'l, Inc., 566 F.3d at 156; Bohreer v. Erie Ins. Grp., 475 F. Supp. 2d 578, 584 (E.D. Va. 2007) (noting that Virginia recognizes the "potentiality rule," wherein "an insurer's duty to defend is triggered if there is any possibility that a judgment against the insured will be covered under the insurance policy"). The well recognized "eight corners rule," compares the "four corners of the [insurance] policy" with the "four corners of the [underlying] complaint" to determine whether coverage exists. Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co., 60 Va. Cir. 418 (Va. Cir. Ct. Dec. 16, 2002); AES Corp. v. Steadfast Ins. Co., 725 S.E.2d 532, 535 (Va. 2012) (noting that Virginia consistently applies the "eight corners rule" considering only "the allegations in the complaint and the provisions of the insurance

policy . . . in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured").

Air Tech attached to its motion for summary judgment additional evidence beyond the eight corners of the policy and the amended complaint in the state court action and argues that, "if there are documents outside of [Halls's Construction's state court amended complaint] that would lead the court to believe that [Hall's Construction] *could* state a claim against Air Tech covered by the Insurance Policy with Western World, it is both appropriate and necessary for the court to review those documents . . . ." Def.'s Reply in Supp. of Summ. J. at 4, Dkt. No. 26.³ Air Tech asserts that the eight corners rule is a "starting point for analysis of coverage" instead of a boundary, purportedly relying on CACI Int'l, Inc. Id. at 3. However, in CACI Int'l, Inc., the Fourth Circuit affirmed that the eight corners rule limited the court's review only to the policy language and the allegations in the complaint:

> Because the question is a matter of state insurance law rather than of federal procedure, and because Virginia courts have not signaled a readiness to look beyond the underlying complaint, we will decline to consider those documents attached to the complaints or on which the complaints in the underlying action rely.

556 F. 3d at 156.

Air Tech also points to Pa. Nat. Mut. Cas. Ins. v. Block Roofing Corp., 754 F. Supp. 2d 819, 822–23 (E.D. Va. 2010) to support its argument that a court can review evidence beyond the complaint and insurance policy to determine coverage. However, the court specifically states in Pa. Nat. Mut. Cas. Ins., "whether [the insurer] has a duty to defend [the insured] is determined by the Eight Corners Rule . . . ." Id. at 826. The Potentiality Rule referenced by the court does not indicate that the court should review documents outside the "eight corners," but rather mandates

---

³ Air Tech has submitted exhibits A through M as attachments to its Memorandum in Support of Motion for Summary Judgment. These exhibits include a Declaration from the president of Air Tech, contracts, discovery from the state court action, and work reports.

that "an insurer's duty to defend is triggered if there is any 'potentiality' that the allegations in the pleadings could state a claim that would be covered by the policy." Id. (quotation omitted). Pa. Nat. Mut. Cas. Ins. does not stand for the proposition that a court should look to evidence beyond the eight corners of the policy and complaint to determine the duty to defend. Indeed, the court in deciding the coverage issue in Pa. Nat. Mut. Cas. Ins. Co. does not go beyond the allegations in the underlying complaint, but instead reasons that the language used "does not eliminate *the potential* that [coverage exists]."[4] Id.

I find that I cannot look beyond the eight corners of the state court amended complaint and the Western World policy under the circumstances presented here.[5] See Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 533 (4th Cir. 2015) ("[W]hen determining whether insurance coverage exists, Virginia courts . . . determine whether the complaint alleges facts and circumstances that fall within the four corners of the policy. The claim's probability of success is

---

[4] In support of this conclusion, the court does reference certain discovery responses to illustrate its point. However, the court emphasizes:

> [The Court's] decision to allow [the insured's] supplemental discovery responses is separate and distinct from its decision to grant partial summary judgment in favor of [the insured]. As explained above, the Court's decision to grant partial summary judgment for [the insured] rested upon the Court's interpretation of the CGL Contract's exception to the pollution exclusion and upon the Court's analysis under the Eight Corners Rule.

Pa. Nat. Mut. Cas. Ins. Co, 754 F. Supp. at 829.

[5] In Copp v. Nationwide Mut. Ins. Co., 692 S.E.2d 220, 224 (Va. 2010), the Supreme Court of Virginia, in determining that the insurer was obligated to defend its insured in a lawsuit stemming from an altercation, went beyond the eight corners rule and considered the insured's claim that he acted in self-defense. The court acknowledged that in multiple prior decisions in similar types of cases, it had applied the eight corners rule, but the court emphasized:

> None of our prior decisions, however, has involved the type of situation we have here, where in one of the four corners of an insurance policy there is a provision specifically stating that an exclusion "does not apply to bodily injury or property damage caused by an insured trying to protect person or property." This provision must be considered and construed together with each phrase of the umbrella policy.

Id. at 24–25. The instant action neither resembles the situation in Copp, nor involves the application of a coverage exclusion. Instead, here I determine that the allegations in the state court action do not fall within the scope of the insurance policy.

inconsequential."). Indeed, in AES Corp., the Virginia Supreme Court stated that "it is a well-established principle, consistently applied in this Commonwealth, that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." 725 S.E.2d at 535. Accordingly, I consider only the Western World policy and the amended complaint from the state court action to determine the coverage issues.

### B. The state court action does not allege an "occurrence" under the Western World policy

Air Tech, as the insured, has the burden to establish that Western World's policy provides coverage, "but this burden is not onerous because '[p]rinciples of insurance law in Virginia . . . are solicitous of insureds.'" Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d at 528 quoting CACI Int'l Inc., 566 F.3d at 155. Further, because an insurer's duty to defend is broader than the duty to indemnify, if the underlying complaint alleges some facts for which there may be coverage, then a potential for coverage exists and the insurer has a duty to defend. See Va. Elec. & Power Co., 475 S.E.2d at 265–66; see also Copp, 692 S.E.2d at 224. An insurer has no duty to defend, however, only "when it is clear from the initial pleading that the insurer would not be liable under the policy for any judgment based on the allegations." Union Ins. Co. v. Riverpoint, L.C., No. 3:06CV372–HEH, 2007 WL 656895, at *2 (E.D. Va. Feb. 27, 2007) citing Reisen v. Aetna Life & Cas. Co., 302 S.E.2d 529, 531 (Va. 1983).

Western World argues that the claims asserted in the state court action do not implicate a duty to defend or indemnify Air Tech because the Western World policy does not cover the loss where (1) the allegations in the state court action do not allege "property damage" caused by an "occurrence"; (2) exclusions 2(k) and 2(l) bar coverage for "damage to your product" and "damage to your work;" (3) the policy excludes coverage for property damages "expected or

intended from the standpoint of the insured" (exclusion 2(a)); and (4) the policy excludes property damage which Air Tech is obligated to pay because of the assumption of liability in a contract or agreement (exclusion 2(b)). In contrast, Air Tech argues that Western World is obligated to provide a defense against the state court suit filed by Hall's Construction because the state court amended complaint alleges property damage (damage to the Chiller) caused by an "occurrence" and none of the identified exclusions preclude coverage.

This case turns on whether the damage to the Chiller qualifies as an "occurrence" under the Western World policy, or is merely defective work by an insured causing damage to the insured's product for which no coverage exists. The Western World policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Generally, under a commercial general liability policy, when an "insured poorly performs its contractual obligations *damaging only the insured's work or product*, the resulting contractual liability is 'expected' under the terms of its commercial general liability policy," is not an "accident", and therefore is not covered. Hotel Roanoke Conference Ctr. Comm'n v. Cincinnati Ins. Co., 303 F. Supp. 2d 784, 786 (W.D. Va. Feb. 23, 2004), aff'd, 119 Fed. App'x 451 (4th Cir. 2005) (emphasis added) (applying Virginia law and noting that if the plaintiff "wished to insure proper construction of the Conference Center, it should have required a performance bond"). Here, the Western World policy specifically provides coverage for property damage caused by an occurrence, and it excludes coverage for "property damage" that is "expected or intended from the standpoint of the insured." See Western World policy at 33, Dkt. No. 1-2.

Coverage may be triggered where the insured's actions cause damages which extend beyond its work. For example, in Nautilus Ins. Co. v. Strongwell Corp., 968 F. Supp. 2d 807,

(W.D. Va. June 5, 2013), the court held that "if a subcontractor's faulty workmanship results in damage to property other than the subcontractor's work product, there may be an 'occurrence' triggering coverage . . . ." Id. at 816. In Nautilus, applying Virginia law, the court found that the policy may provide coverage where the damages sought in the underlying action were "not limited to the costs of repairing or replacing [the insured's] purportedly defective work product" but instead the claims against the insured asserted that the insured's defective work resulted in physical damage to other property. Id. In Stanley Martin Cos., Inc. v. Ohio Cas. Grp., 313 Fed. App'x 609, 614 (4th Cir. 2009) (unpublished), the court held that insured's contractual obligation to replace defective trusses it had installed "was not unexpected or unforeseen under the terms of its building contracts for the townhouses," but that the damage which spread beyond the trusses to non-defective parts of the townhouses "was an unintended accident, or an occurrence" triggering coverage under the policy. Likewise, in French v. Assurance Co. of America, 448 F.3d 693, 703–706 (4th Cir. 2006), the court, applying Maryland law, held that the definition of an occurrence did not encompass the cost of repairing or replacing defective synthetic stucco installed by a subcontractor, which allowed moisture to penetrate the stucco and damage the interior wall, because the repair or replacement cost was not unforeseen. The damage to the remainder of the house because of the subcontractor's defective work, however, was an occurrence, and thus covered by insurance. Finally, in Dragas Mgmt. Corp. v. Hanover Ins. Co., 798 F. Supp. 2d 758, 763 (E.D. Va. July 21, 2011), the court applied both Stanley Martin and French to hold that the mere replacement of defective drywall was not an occurrence under the policy, but that "any repair or replacement of non-defective components of the homes . . . or personal property of the homeowners [beyond the defective drywall] constituted an occurrence."

Air Tech's contention that this case is similar to Dragas Mgt. Corp., because the "alleged faulty installation due to an incorrect or incomplete instruction manual (or potentially due to other work performed by Johnson Controls) allegedly caused damage to the non-defective [C]hiller" belies the fact that the core purpose of Air Tech's contract with Hall's Construction was to provide a working Chiller. The damages Hall's Construction seeks in the state court action are limited to the costs of replacing the Chiller, which allegedly malfunctioned because "Air Tech and Johnson [Controls] negligently failed to accurately [] describe the equipment, the components, and the required electrical connections" and failed to correctly install the equipment. State Court Am. Compl. ¶¶ 9–10, Dkt. No. 1-5. Thus, Hall's Construction contends that Air Tech failed to perform its obligations under the contract to supply the Chiller, and this failure damaged *only the Chiller*. Accordingly, the allegations here are similar to those cases which hold that, when the damages sought in the underlying action are limited to the costs of replacing the insured's purportedly defective work product, the allegations do not give rise to coverage. See Hotel Roanoke Conference Ctr. Comm'n, 303 F. Supp. 2d at 786; Stanley Martin Cos., Inc. 313 Fed. App'x at 614; French, 448 F.3d 693. Such a loss is not unexpected or unforeseen, and therefore, is not an occurrence under the Western World policy.

I recognize, however, that the allegations of negligence in the state court amended complaint merit additional scrutiny, to determine whether these allegations bring this case beyond solely breach of contract.[6] The state court action sets forth the allegations of breach in paragraphs 9 and 10 of the state court amended complaint as follows:

> 9. That the equipment procured from Johnson [Controls] by Air Tech and the manuals provided by Air Tech and Johnson [Controls] negligently failed to accurately [] describe the equipment, the components, and the required electrical connections, which negligent failure and breach of warranty were the proximate cause in the malfunction of the

---

[6] Air Tech writes, "[Hall's Construction] has alleged at least one basis, the negligence claim, on which it could potentially recover against Air Tech . . . ." Def.'s Resp. in Opp. at 3, Dkt. No. 24.

> equipment, resulting in the damage and destruction of the said equipment and the failure of the equipment to meet the requirements of the contract.
>
> 10. The failure of the manuals to accurately describe the work to be performed and the negligent failure of the co-defendants to correctly install the equipment resulted in the failure of the Chiller, which required the replacement of the Chiller and, as a result thereof, [Hall's Construction] incurred expenses in the amount of $121,629.76.

State Court Am. Compl. at ¶¶ 9, 10, Dkt. No. 1–5.

Western World argues that the allegations of negligence in the state court amended complaint do not create an "occurrence" as, at bottom, "nothing more [is alleged] than the breach of duties undertaken by Air Tech in the Chiller Contract." Pl.'s Mem. in Supp. of Summ. J. at 20, Dkt. No. 20. In support, Western World points to Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 507 S.E.2d 344, 345 (Va. 1998) arguing that the allegations of negligence in the state court amended complaint do not support an independent common law duty, and thus do not support an action in tort. In Richmond Metro. Auth. a municipal corporation entered into an agreement with a contractor for the construction of a baseball stadium. Id. Years later, the municipal corporation learned that the contractor failed to comply with the design specifications set forth in the contract, despite having represented under oath that it had properly completed the work, and filed an action against the contractor, alleging actual and constructive fraud.[7] Id. at 346. On appeal, the Supreme Court of Virginia grappled with whether the contractor's misrepresentations about its compliance with the contract or its "false applications under oath to induce payments" were "separate and independent wrongs that [went] beyond [the] contractual duties" and supported causes of action for actual and constructive fraud. Id. The court determined that because the municipal corporation's allegations of constructive fraud were "nothing more than allegations of

---

[7] The municipal corporation discovered "that many of the conduits contained no grout or insufficient grout and that, as a result, the steel tendons/bars in the conduits had corroded" and the stadium did not meet the building code. Richmond Metro. Auth., 507 S.E.2d at 345–46.

negligent performance of contractual duties," they were not actionable in tort. Id. at 347. Similarly, because "each particular misrepresentation by [the contractor] related to a duty or an obligation that was specifically required by the . . . [c]ontract," the misrepresentations did not give rise to a cause of action for actual fraud.[8] Id.

Likewise, here, the source of any duty breached is solely from the contract entered into between Hall's Construction and Air Tech. See Filak v. George, 594 S.E.2d 610, 613 (Va. 2004) ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts."). The state court action alleges, "Air Tech entered in a labor and materials contract to provide the material and equipment and provide for the installation of a Chiller in accordance with the proposal that Air Tech had submitted to [Hall's Construction]." State Court Am. Compl. at ¶ 4, Dkt. No. 1-5. And further, "Under the terms of the subcontract Air Tech was to provide equipment and to perform work necessary and incidentally required to complete the Chiller in accordance with the proposal and to provide spare parts, all as set forth in the subcontract." Id. at ¶ 5. The companion allegations of breach are that the manuals provided by Air Tech "negligently failed to accurately describe the equipment, the components and the required electrical connections" and further that Air Tech "negligent[ly] fail[ed] . . . to correctly install the equipment." Compl. ¶¶ 9–10. Just like in Richmond Metro. Auth., the state court amended complaint alleges "nothing more than allegations of negligent performance of contractual duties," that are simply not actionable in tort,

---

[8] The Supreme Court of Virginia specifically noted that the municipal corporation conceded during oral argument that, though the defendant had "sealed the empty tube opening with grout, thus giving the false impression that the conduits were filled with grout," the contract actually required that the ends of the grout tubes be cut off and sealed, "[t]hus, this step was part of the construction process and not an action undertaken by [the builder] solely to hide its failure to inject grout into the conduits." Richmond Metro. Auth., 507 S.E.2d at 345, 347 (1998)

and do not convert the malfunction or damage to the Chiller into an occurrence under the Western World policy. Richmond Metro. Auth., 507 S.E. 2d at 347.

Air Tech's contentions that, as of the time Air Tech delivered and inspected the Chiller it remained undamaged, and that no Air Tech workers damaged the Chiller, miss the point. Def.'s Mem. in Supp. of Summ. J. at 4–5, Dkt. No. 22. Hall's Construction asserts a straightforward claim that Air Tech failed to provide a working Chiller. Air Tech may have a strong defense to liability, but the claim in the state court action is for breach of contract, for which the policy does not provide coverage. At bottom, the state court action alleges only Air Tech's breach of contractual obligations "because no duty apart from contract to do what is complained of exists." Id. at 507 S.E.2d 344, quoting Oleyar v. Kerr, Trustee, 225 S.E.2d 398, 399-400 (Va. 1976); See also Filak, 594 S.E.2d at 613 ("The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations."). The Western World policy does not provide coverage merely because Hall's Construction alleges that Air Tech negligently breached a contractual duty.

**V.     Conclusion**

I find that the state court action does not allege an "occurrence" as defined in the Western World policy, and thus there is no insurance coverage.[9] Because I find that the state court action does not allege any facts on which Western World would be liable for any judgment, Western

---

[9] Because I find that the state court action does not allege an "occurrence," and that the damage to the Chiller was not a covered event, I need not address the exclusions set forth in the Western World policy, including that the Western World policy specifically excludes from coverage "property damage" that the "insured is obligated to pay by reason of the assumption of liability in a contract or agreement." See Western World policy at 33, Dkt. No. 1-2. An exclusion limits the insuring clause and does not extend or grant coverage. See Nationwide Mut. Ins. Co. v. Wenger, 278 S.E.2d 874, 876 (Va. 1981); see also PBM Nutritionals, LLC v. Lexington Ins. Co., 724 S.E.2d 707, 713 (Va. 2012) (noting that "an exception to an exclusion does not create coverage where none exists").

World has no duty to defend or indemnify its insured for any damage which may be awarded against it in the state court action. Accordingly, Western World's motion for summary judgment is granted, Air Tech's motion for summary judgment is denied, and this case is dismissed with prejudice.

Entered: March 29, 2019

*Robert S. Ballou*

**Robert S. Ballou**
United States Magistrate Judge